# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

JOSHUA R. BESSICK,

    Plaintiff,

v.

COMM'R PATRICIA GOINS-JOHNSON,
WARDEN RICHARD E. MILLER, JR.,
CHIEF OF SECURITY TODD K. FAITH and
LIEUTENANT B. APPEL,

    Defendants.

Civil Action No. TDC-16-3649

## MEMORANDUM OPINION

On September 6, 2016, self-represented Plaintiff Joshua R. Bessick was assaulted by other inmates while returning to his housing unit at Roxbury Correctional Institution ("RCI") in Hagerstown, Maryland. He now brings this civil action against Defendants Patricia Goins-Johnson, Commissioner of Correction for the Maryland Department of Public Safety and Correctional Services; Richard E. Miller, Jr., Warden of RCI; Todd K. Faith RCI Chief of Security; and Lieutenant Appel, a correctional officer at RCI, pursuant to 42 U.S.C. §1983. Bessick alleges that Defendants: (1) failed to protect him from harm while he was housed at RCI; (2) failed to supervise their subordinates; (3) imposed unconstitutional conditions of confinement; (4) denied him adequate medical care; (5) failed to control inmate access to dangerous weapons; (6) failed to "prevent prisoner dominance"; and (7) failed to maintain adequate staffing. Compl. ¶¶ 11-39, ECF No. 1. He seeks $15 million in compensatory and punitive damages.

Pending before the Court is Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. Bessick was informed by the Court, pursuant to *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), that failure to file a memorandum in opposition to the Motion could result in dismissal of the Complaint. Bessick did not oppose the Motion. Upon consideration of the Complaint and the Motion, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, Defendants' Motion, construed as a Motion for Summary Judgment, will be GRANTED.

## BACKGROUND

Bessick arrived at RCI in February 2016 and was placed in Housing Unit 3. On the morning of September 6, 2016, as Bessick was returning to that unit, two other inmates attacked him with knives, causing lacerations to the right side of his face and to his left hand. After the incident, RCI medical staff treated Bessick, who received 59 sutures to close the wounds. On September 13, 2016, Bessick's facial sutures were removed, and medical staff noted that his wounds were healing well. On September 19, 2016, when the sutures on Bessick's hand were removed, Bessick told medical personnel that that his hand was healing but he was still experiencing some pain. Bessick did not have any additional complaints during that visit.

Following the assault, correctional officers searched the area and recovered two homemade weapons. Although security video was reviewed, the inmates who assaulted Bessick could not be identified. Bessick did not cooperate with the investigation and declined to give a statement. He was placed in voluntary administrative segregation for his own safety until his transfer to another facility.

According to Bessick, Housing Unit 3 was "a well-known and notoriously violent Gang Unit" where the incidence of prison stabbing incidents was "exceptionally high." Compl. ¶ 6.

He alleges that upon his arrival in Unit 3, members of the Black Guerrilla Family ("BGF") gang asked him to hide their knives for them and to join the BGF. Bessick declined either to join the BGF or to hide weapons for BGF members. Instead, he wrote a note to the Housing Unit Supervisors requesting to be transferred to another housing unit. According to Bessick, he received no response to his request.

Defendants assert that contrary to Bessick's allegations, Unit 3 was not a "well-known and notoriously violent Gang Unit" at RCI. *Id.* According to Lt. Appel, the RCI correctional officer responsible for intelligence matters, "RCI houses members of Security Threat Groups in all of the Housing Units" and does not assign such members to a particular housing unit. Appel Decl. ¶ 3, Mot. Dismiss Ex. 2, ECF No. 16-3. In addition, Lt. Appel asserts that Bessick is "a validated member" of the BGF. *Id.*

According to Warden Miller, RCI correctional officers are trained to respond appropriately to an inmate's request that he not be housed with another inmate because of hostility between them, different gang affiliations, or other safety concerns. Upon such a request, correctional officers are trained to arrange for a different cell assignment. Warden Miller, Security Chief Faith, and Lt. Appel all assert that prior to the September 2016 incident, they had not received any information that Bessick was in danger or feared that he was in danger of assault by any other inmate, nor did they have information that any group targeted Bessick or intended to harm him. According to Lt. Appel, when an inmate has a known verified enemy, that enemy is listed in the Maryland Department of Public Safety and Correctional Services ("DPSCS") records.

Warden Miller's duties include reviewing staff worksheets daily to ensure that all posts are adequately staffed. According to Warden Miller, at the time of Bessick's stabbing, the

security posts responsible for overseeing the movement of inmates back to Unit 3 were adequately staffed. He asserts that despite the best efforts of correctional staff, including frequent searches of inmates' persons and cells, inmates are adept at making, obtaining, and hiding contraband weapons such as homemade knives.

## DISCUSSION

In their Motion, Defendants seek dismissal under Federal Rules of Civil Procedure 12(b)(6) or summary judgment under Rule 56. In support of their Motion, Defendants argue that (1) the Eleventh Amendment bars claims against Defendants in their official capacities; (2) Bessick has not alleged sufficient facts to state a plausible claim for relief for Eighth Amendment violations; (3) Bessick cannot demonstrate that Defendants are liable under a theory of supervisory liability under § 1983; and (4) Defendants are entitled to qualified immunity.

### I. Legal Standards

Defendants seek dismissal of the claims against them in their official capacity pursuant to Eleventh Amendment immunity. To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Here, Defendants have submitted with their Motion documentary evidence, in the form of declarations and prison records. If the Court considers such evidence in assessing Defendants' remaining arguments, the Motion must be converted into one for summary judgment. Fed. R. Civ. P. 12(d). The Court may do so if the nonmoving party has received notice that the moving party is seeking summary judgment but has not provided a Rule 56(d) affidavit or otherwise provided a persuasive argument that consideration of summary judgment is not appropriate at this time. *See Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002); *Williams v. Gyrus ACMI, Inc.*, 790 F. Supp. 2d 410, 417 (D. Md. 2011) (stating that a court may properly convert a motion to dismiss to one for summary judgment where the plaintiff had not submitted an affidavit under Rule 56(d) demonstrating the need for further discovery or otherwise challenged the moving party's evidence). Here, the Motion explicitly seeks summary judgment in the alternative, and the Court specifically notified Bessick of the nature of the Motion and of his right to submit evidence in opposition to it. Where Bessick has not opposed the Motion, much less offered any argument that discovery is needed or that consideration of summary judgment is inappropriate, *see* Fed. R. Civ. P. 56(d), the Court may and will construe the Motion as one for summary judgment and consider the submitted evidence.

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Baltimore Ravens Football Club,*

*Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). The nonmoving party has the burden to show a genuine dispute on a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

## II. Eleventh Amendment

Under the Eleventh Amendment to the United States Constitution, a state, its departments, and its agencies, absent consent, are immune from suits in federal court brought by its citizens or the citizens of another state. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). The Eleventh Amendment also bars claims brought against state employees in their official capacities, because such suits are tantamount to suits against the state itself. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Although the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-201(a) (2015), it has not waived Eleventh Amendment immunity to suit in federal court. Therefore, pursuant to the Eleventh Amendment, Bessick's claims against Defendants in their official capacities are dismissed.

## III. Eighth Amendment

Bessick's various claims against Defendants in their individual capacities all constitute claims that they violated his Eighth Amendment right to be free from cruel and unusual punishment. Specifically, the claims that Defendants failed to protect, imposed unconstitutional conditions of confinement, failed to control weapons, failed to prevent prisoner dominance, and failed to maintain adequate staffing fall under the category of a claim that Defendants acted with deliberate indifference to inmate safety. Separately, Bessick has asserted that Defendants

violated the Eighth Amendment by denying him adequate medical care and failing to supervise correctional officers.

A.      **Inmate Safety**

"The Eighth Amendment's prohibition on cruel and unusual punishments imposes certain basic duties on prison officials." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Those duties "include maintaining humane conditions of confinement, including the provision of adequate medical care and . . . reasonable measures to guarantee the safety of the inmates." *Id.* (quoting *Farmer*, 511 U.S. at 832). "[N]ot every injury suffered by a prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (citation omitted). A two-part inquiry that includes both an objective and a subjective component must be satisfied before liability is established. *Raynor*, 817 F.3d at 127.

Objectively, a prisoner "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury." *Danser v. Stansberry*, 772 F.3d 340, 346 (4th Cir. 2014) (citation omitted). The objective inquiry requires courts to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). Here, Defendants do not dispute, and this Court finds, that the stabbing of Bessick was the type of injury that satisfies the objective inquiry.

Subjectively, a plaintiff must establish that the prison official involved had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834 (citations omitted). A prison official has such deliberate indifference if the official has actual knowledge of, and yet disregards, an excessive risk to the prisoner's health

7

or safety. *Id.* at 837. The official must be aware of facts from which an "inference could be drawn that a substantial risk of serious harm exists," actually draw that inference, then disregard the risk. *Id.* A plaintiff may "prove an official's actual knowledge of a substantial risk in the usual ways, including inference from circumstantial evidence" so that "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Raynor*, 817 F.3d at 128 (citation omitted).

Here, although Bessick asserted in his Complaint that he requested a cell change because he feared for his safety due to overtures by the BGF, Defendants in seeking summary judgment, have submitted evidence that they were not aware of these concerns. Specifically, Warden Miller, Security Chief Faith, and Lt. Appel have provided declarations stating that they never received information that Bessick was in danger prior to the assault. Lt. Appel has further stated in his Declaration that gang members were not restricted to Housing Unit 3 and that Bessick was, in fact, a member of the BGF. Although Bessick was notified by the Court that he could submit affidavits and other evidence to counter Defendants' submission, he has not done so. Where Defendants' evidence is unopposed, Bessick has not established a genuine issue of material fact whether Defendants were aware of and disregarded a substantial risk to his safety from BGF members and thus failed to protect him or provided unconstitutional conditions of confinement.

Likewise, where Warden Miller has provided uncontroverted statements that there was adequate staffing at the time of the stabbing, and that RCI makes regular efforts to prevent the presence of weapons among inmates, Bessick has not shown a genuine issue of material fact to support a claim that inadequate staffing or a failure to control weapons created a substantial risk to his safety that was known to, but disregarded by, Defendants. Beyond cursory allegations in the Complaint, Bessick has offered no evidence to support a claim of deliberate indifference to

inmate safety based on the alleged use of inmates to monitor inmate living areas for threats. Accordingly, where Bessick has failed to establish a genuine issue of material fact whether Defendants were aware of a risk of harm to Bessick and disregarded it, the Court will grant summary judgment on the inmate safety claims.

### B. Medical Care

In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Objectively, the medical condition at issue must be serious. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A medical condition is serious when it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (citation omitted). As for the subjective component, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively knows of and disregards an excessive risk to inmate health or safety." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer*, 511 U.S. at 837). "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.* (citations omitted). "[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.* Thus, "[d]eliberate indifference is more than mere

9

negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (internal alterations omitted). Under this standard, a mere disagreement between an inmate and a physician over the appropriate level of care does not establish an Eighth Amendment violation absent exceptional circumstances. *Id.* Moreover, if the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *See Farmer*, 511 U.S. at 844.

Although Bessick suffered serious injuries when he was stabbed, he has offered no evidence that his medical care was inadequate. To the contrary, Defendants have submitted undisputed medical records establishing that Bessick was provided with medical treatment immediately after the attack, including 59 stitches, and that the sutures were removed without incident. Bessick did not request further medical attention relating to those injuries.

Moreover, where Defendants are all correctional officers or supervisors, they were generally entitled to rely on the medical treatment decisions of the RCI medical staff. *See Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1996); *see also Miltier v. Beorn*, 896 F. 2d 848, 854-55 (4th Cir. 1990) (noting that supervisory prison officials were entitled to rely on the professional judgment of trained medical providers and thus would not be found deliberately indifferent for failing to supervise prison physicians), *overruled on other grounds by Farmer*, 511 U.S. at 851. On this record, the Court concludes that there is no genuine issue of material fact whether Defendants acted with deliberate indifference to a serious medical need. The Court will therefore grant Defendants summary judgment on Bessick's Eighth Amendment claim alleging inadequate medical care.

### C. Supervisory Liability

Finally, Bessick cannot succeed on his claim that Defendants' failed to supervise. According to the Complaint, all four Defendants were supervisory officials who "deliberately failed to act, train, monitor and discipline their subordinates" so as to "eliminate Gang inspired assaults" and to prevent Bessick and others from being subjected to gang assaults. Compl. ¶3. As discussed above, the evidence does not support a conclusion that Defendants personally acted with deliberate indifference to inmate safety. Notably, Bessick has not alleged that any particular subordinate correctional employee acted with such deliberate indifference. Even if he had, the doctrine of *respondeat superior* does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (holding that there is no *respondeat superior* liability under § 1983). Rather, liability of supervisory officials is "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). To establish supervisory liability under § 1983, a plaintiff must show that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted). "A single act or isolated incidents are normally insufficient to establish supervisory inaction

upon which to predicate § 1983 liability." *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (footnote and citations omitted).

Here, Bessick has failed to plead or demonstrate sufficient facts showing supervisory indifference to, or tacit authorization of, any misconduct by Defendants' subordinates. As discussed above, Bessick failed to show that his Eighth Amendment rights were violated. Accordingly, he has necessarily failed to demonstrate that Defendants authorized or were indifferent to any such violation. Bessick's conclusory assertions do not demonstrate any pattern of widespread abuse necessary to establish supervisory action or inaction giving rise to § 1983 liability. *See id.* ("Generally, a failure to supervise gives rise to § 1983 liability, however, only in those situations in which there is a history of widespread abuse.").

To the extent that Bessick's claim is based on Defendants' alleged failure to train or supervise their subordinates, it also fails. Warden Miller has asserted in his Declaration that at the time of the September 6 incident, the correctional officers had been trained in accordance Maryland Training Commission standards and are certified by that Commission annually. Bessick has offered no evidence to refute Warden Miller's statement or to contest the adequacy of training and supervision of the relevant correctional officers. Defendants are therefore entitled to summary judgment on the failure to supervise claim. Accordingly, the Court need not address Defendants' qualified immunity claim.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, is GRANTED. A separate Order shall issue.

Date: December 15, 2017

THEODORE D. CHUANG
United States District Judge